Markman, J. (concurring).
 

 If the present case is eventually resolved on its merits, there are two principal outcomes that might result. MCL 388.1752b will either be sustained or nullified on the basis of this Court's assessment of Const. 1963, art. 8, § 2 ;
 
 Traverse City Sch. Dist. v. Attorney Gen.
 
 ,
 
 384 Mich. 390
 
 ,
 
 185 N.W.2d 9
 
 (1971) ; and whatever other sources of law we determine to be relevant. Sustaining MCL 388.1752b would perhaps be in tension with the Establishment Clause, while nullifying MCL 388.1752b would perhaps be in tension with the Free Exercise Clause. Because the recent decision of the United States Supreme Court in
 
 Trinity Lutheran Church of Columbia, Inc. v. Comer
 
 , --- U.S. ----,
 
 137 S. Ct. 2012
 
 ,
 
 198 L.Ed.2d 551
 
 (2017), may well be highly relevant in avoiding either of these potentially unsustainable outcomes, I would respectfully urge the parties to brief and to be prepared to respond to questions concerning the impact, if any, of
 
 Trinity Lutheran
 
 . Indeed, for the following reasons, I do not believe we can undertake a disciplined assessment of this case absent consideration of
 
 Trinity Lutheran
 
 .
 

 First
 
 ,
 
 Traverse City Sch. Dist.
 
 itself sought specifically to harmonize Const. 1963, art. 8, § 2 with the Free Exercise Clause to avoid "serious constitutional problems" with the state constitutional provision.
 
 Traverse City Sch. Dist.
 
 ,
 
 384 Mich. at 430
 
 ,
 
 185 N.W.2d 9
 
 . In particular, we stated that a "literal perspective on [the provision's] mandate of no public funds for non-public schools would ... [i]n the case of parochial or other church-related school children ... violate the free exercise of religion clause...."
 

 Id.
 

 Thus, it would be difficult to disconnect the analysis of either
 
 Traverse City Sch. Dist.
 
 or Const. 1963, art. 8, § 2, from the harmonizing authority itself, the Free Exercise Clause.
 

 Second
 
 , it is a rule of state constitutional interpretation that "wherever possible an interpretation that does not create constitutional invalidity is preferred to one that does."
 
 Traverse City Sch. Dist.
 
 ,
 
 384 Mich. at 406
 
 ,
 
 185 N.W.2d 9
 
 . Consequently, in
 
 Traverse City Sch. Dist.
 
 , we accorded a particular interpretation to Const. 1963, art. 8, § 2 specifically to avoid a conclusion that it violated the Free Exercise Clause. Where this Court may conceivably be obligated to render an interpretation of Const. 1963, art. 8, § 2 that is consistent, rather than inconsistent, with the Free Exercise Clause, it would be problematic for it to fail to give full consideration to interpreting our state Constitution in accord with the Free Exercise Clause as it is now understood.
 

 Third
 
 ,
 
 Trinity Lutheran
 
 held that a state agency's denial of state funds to a
 religious school based on a Missouri constitutional provision similar to Const. 1963, art. 8, § 2 violated the Free Exercise Clause.
 
 Trinity Lutheran
 
 , --- U.S. at ----,
 
 137 S. Ct. at 2017
 
 . While the Missouri provision expressly required the denial of state funds based on the religious classification of a putative recipient, whereas Const. 1963, art. 8, § 2 is facially neutral on the matter, this Court noted in
 
 Traverse City Sch. Dist.
 
 that "with 98 percent of the private school students being in church-related schools," the classification set forth in Const. 1963, art. 8, § 2 "is nearly total" in the " 'impact' " of the classification on religious schools.
 
 Traverse City Sch. Dist.
 
 ,
 
 384 Mich. at 434
 
 ,
 
 185 N.W.2d 9
 
 . As a result, if Const. 1963, art. 8, § 2 is deemed to be effectively indistinguishable from the Missouri provision addressed in
 
 Trinity Lutheran
 
 , the denial of state funds in this case may well raise Free Exercise concerns under
 
 Trinity Lutheran
 
 .
 

 Fourth
 
 , Const. 1963, art. 8, § 2 may reasonably be characterized as upholding the values of the Establishment Clause by precluding state funds from being used to assist religious institutions. Yet the Establishment Clause and the Free Exercise Clause may often "tend to clash with the other" because each sets forth objectives seemingly in tension.
 
 Walz v. Tax Comm. of City of New York
 
 ,
 
 397 U.S. 664
 
 , 669,
 
 90 S.Ct. 1409
 
 ,
 
 25 L.Ed.2d 697
 
 (1970). Thus, to the extent that Const. 1963, art. 8, § 2 furthers a valid purpose as to the Establishment Clause, it may consequently be in some tension with the Free Exercise Clause. It would therefore be difficult to assess the validity of Const. 1963, art. 8, § 2 under the Establishment Clause without also assessing its validity under the Free Exercise Clause.
 

 This Court owes the parties, and the people of this state, a final decision in this case that fairly considers all inextricably connected issues. The need to fully and finally resolve the present dispute has been made especially critical by the fact that it has now been nearly three years since our Legislature enacted MCL 388.1752b and since a lower court of this state issued a preliminary injunction preventing that law from taking effect. Whether MCL 388.1752b is ultimately sustained, or nullified, it is long past time that this Court, the highest of our state, determine decisively which of these outcomes is warranted, so that the product of our legislative process is no longer maintained in limbo. With that in mind, I concur with the grant order.
 

 Clement, J., not participating due to her prior involvement as chief legal counsel for the Governor.